CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

March 30, 2026

LAURA A. AUSTIN, CLERK
BY: **/s/ M. Poff**
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOEL AARON BURRELL, | ) | |
| Plaintiff, | ) | Civil Action No. 7:24-cv-00900 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| JANE DOE, *et al.*, | ) | Chief United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

Joel Aaron Burrell, a Virginia inmate acting *pro se*, brought this action pursuant to 42

U.S.C. § 1983.  Burrell's complaint alleges deliberate indifference to serious medical needs,

primarily involving a "chemical induced stress test" and resulting symptoms.  (Compl., Dkt. No.

1.)  Burrell has sued four medical providers—Dr. Ball, LPN Dye, RN Bennett, and RN

Waldron—and Israel Hamilton, the Warden of Keen Mountain Correctional Center.  These

defendants move to dismiss.  (Dkt. No. 26.)  Burrell filed a response to the motion.  (Dkt. No.

29.)  Burrell also filed a motion for an emergency transfer to a facility outside of Virginia.  (Dkt.

No. 33.)

For the reasons stated below, defendants' motion to dismiss will be granted, and

plaintiff's motion for a transfer will be denied.[1]

## I.  BACKGROUND

### A.  Plaintiff's Allegations

Burrell alleges that on August 16, 2024, he underwent a chemical induced stress test at

Twin Lake County Hospital.  At this time, Burrell was detained at River North Correctional

Center.  Burrell had a negative reaction to the test, as he rolled off the table and landed on his

---

[1]  Burrell also sued two anonymous defendants, Jane Doe and John Doe Corporation, who have not been identified or served.  The claims against these defendants will also be dismissed.

side.  Plaintiff subsequently experienced burning of the chest (heart/lungs); difficulty eating, swallowing, and breathing; an extreme increase in stomach acid, vomiting, and acid reflux; and a decrease of the airway passage in his trachea.  (Compl. 3.)

After this visit, Burrell was transferred to Keen Mountain.  When he arrived, Burrell filed several grievances and complaints to alert the medical staff that he had been poisoned.  However, Dr. Ball told Burrell that a toxicology test was not necessary.  (Compl. 3.)

Burrell continues to speculate that what "highly raises my suspicion of poisoning is due to difficulty breathing, nausea and/or vomiting, headache, abdominal pain (level 10), and seizures."  (Compl. 4.)  He states that Dr. Bell "allegedly" ordered a visit with a stomach doctor for an endoscopy to investigate a possible hiatal hernia.  Burrell informed Nurse Rose of his symptoms during an undated blood pressure check.  Plaintiff concedes that Dr. Ball has referred him to a cardiologist, and that he had an echocardiogram.  (*Id.* at 5.)

The complaint then cites a facility request dated November 9, 2024.  Plaintiff asks the court to note that Nurse Rose placed a light green comma on the upper right edge of the facility request to indicate that "comma" means "karma" for a crime "I did not commit."  (*Id.*)  This confirms Burrell's suspicion of a government assassination attempt to conceal a wrongful conviction in a state court case.  (*Id.* at 5–6.)  Burrell claims that the plot involves "identity theft of my identity to a Philadelphia, PA police officer named Joel Burrell, for railroading me for a criminal conviction and concealing my identity . . . ."  (*Id.* at 6.)  "This is to keep federal courts from ever knowing about the case, if I'm assassinated.  This is due to my family inheritance of my Grandfather, . . . a movie director; my father, . . . and a music publishing/book publishing deal."  (*Id.*)

As evidence of this conspiracy, Burrell then cites an emergency grievance log, written on November 12, 2024, about an abnormal increase in heart rate.  However, LPN Dye did not evaluate plaintiff or deem it an emergency.  Even more suspicious is that Nurse Waldron[2] and Nurse Bennett attempted to conceal such records.  (*Id.*)

In further support of his first claim for deliberate indifference, Burrell claims that his condition is worsening which is likely to result in internal strangulation, heart attack, or stroke. (*Id.* at 7.)

Burrell also alleges that Dr. Ball committed gross negligence by not ordering toxicology despite his symptoms.  (Compl. 8.)  Burrell mentions that Nurse Rose Marie Tyler, who is not a defendant in this action, has caused his hernia and poisoning to be left untreated.  (*Id.*)  LPN Dye, according to Burrell, was grossly negligent when she did not perform a medical assessment and considered his complaint of an irregular heartbeat to be a non-emergency.  This incident occurred on November 12, 2024.  After complaining about responses to some of his grievances, he references a protective order mailed to the Buchanan County Circuit Court Clerk, and claims that certain officials are "utilizing the judicial system to railroad me for pecuniary benefit, due to third party wealthy people.  This isn't nothing, but a scam by the government to give my identity to a third party and attempt to commit a homicide of the Plaintiff in stealth to sacrifice me for millionaires/billionaires." (Compl. 9.)

Finally, Burrell complains that Nurse Bennett committed gross negligence by concealing an emergency grievance to deliberately conceal inadequate medical care.  "Therefore, Jane Doe/John Doe Corporation has committed gross negligence through its employees." (Compl. 10.)

---

[2]  The allegations refer to this individual as Nurse Grossman, but the person has been identified as Nurse Waldron.  (Dkt. No. 21.)

Burrell requests compensatory and punitive damages.  (Compl. 10.)  The court has previously denied plaintiff's request for a preliminary injunction.  (Dkt. No. 32.)

The court construes Burrell's complaint as alleging claims for deliberate indifference and gross negligence related to his medical care.  Attached to plaintiff's complaint is a separate complaint that has been filed as another lawsuit.  (Dkt. No. 8; Case No. 7:25-cv-39 (W.D. Va.).)  Burrell has also attached more than 500 pages of exhibits which include medical records, emergency grievances, and grievances.  (Dkt. Nos. 1-1, 1-2.)

## B. Defendants' Motion

Defendants argue that plaintiff has failed to state either a deliberate indifference to serious medical needs claim under the Eighth Amendment or a gross negligence claim under state law.  (Dkt. No. 27.)  Defendants also note that because allegations against Hamilton have been raised in the case that was opened separately, 7:25-cv-39, they have not considered those allegations to be part of this lawsuit and the complaint in this matter.

## C. Burrell's Response to Motion to Dismiss

In his response to the motion to dismiss, Burrell argues that the documents attached to his complaint should be considered in support his claims.  (Dkt. No. 29.)  Burrell attached additional grievances and complaints to his response brief.  (Dkt. No. 29-1.)

## II.  ANALYSIS

## A. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal and factual sufficiency.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–63 (2007).  To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

4

face." *Iqbal*, 556 U.S. at 678.  The court need neither accept a complaint's legal conclusions drawn from the facts, *id.* at 679, nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  The court, however, accepts as true the complaint's well-pleaded factual allegations and construes these allegations, and the reasonable inferences drawn therefrom, in the light most favorable to the non-moving party.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

## B.  Deliberate Indifference

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A prison official's "deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  The inmate must demonstrate both a serious medical need, and that prison officials were deliberately indifferent to that need.  *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  The first prong is objective—the prisoner must show that "the deprivation of a basic human need was objectively sufficiently serious."  *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993).  In the medical context, a basic human need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Iko*, 535 F.3d at 241.

The deliberate indifference standard requires that "a prison official know of and disregard the objectively serious condition, medical need, or risk of harm."  *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  An inmate therefore must demonstrate the prison official's "actual subjective knowledge of both the inmate's serious

5

medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178. In addition, negligence or medical malpractice in diagnosis or treatment do not, standing alone, establish an Eighth Amendment claim for deliberate indifference. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Estelle v. Gamble*, 429 U.S. 97, 105–08 (1976). Thus, "disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim." *Wright*, 766 F.2d at 849.

Burrell's complaint does not state a deliberate indifference claim against Dr. Ball. Burrell alleges Dr. Ball saw him several times and referred him to specialists. Burrell even concedes Dr. Ball's attentiveness when he alleges: "To be fair, Dr. Ball have ordered for me to see a cardiologist." (Compl. 5.) Burrell disagrees with Dr. Ball's refusal to order or provide "toxicology testing," but this disagreement does not amount to a constitutional violation. Plaintiff has not alleged facts that are sufficient to draw the plausible inference that Burrell was subjected to an excessive risk of harm without this type of testing or analysis.

The complaint also does not state a deliberate indifference claim against RNs Waldron and Bennett or LPN Dye. Burrell alleges that he complained to Dye about an increased heart rate, but this condition, without more, is not objectively serious. *Cf. Montgomery v. Rumsey*, Civil Action No. TDC-21-3279, 2024 WL 4839154, at *2 (D. Md. Nov. 20, 2024) (dismissing fourteenth amendment claim by pretrial detainee based on elevated heart rate and unspecified dehydration symptoms). Moreover, Dye told Burrell that he was being seen by medical on the same day, and his stress test and echocardiogram were normal, so Dye did not act with deliberate indifference. Burrell's allegations that Waldron and Bennett concealed his grievances do not meet either prong of the Eighth Amendment analysis.

Finally, the complaint does not include any factual allegations against Warden Hamilton. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability under § 1983 is "personal, based upon each defendant's own constitutional violations"). Respondeat superior is not applicable to § 1983 cases, and plaintiff has not adequately pled the elements for supervisory liability. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (explaining that a supervisor must have actual or constructive knowledge, inadequate response, and affirmative causal link to impose liability). Burrell argues that the court should consider the exhibits attached to his complaint. (Dkt. No. 29 at 1.) The court is not obliged to piece together a coherent claim on behalf of a pro se litigant by sifting through hundreds of documents. Burrell has also attempted to resuscitate his claim against Warden Hamilton by describing various procedures that he was supposed to follow as the "Facility Unit Head" at Keen Mountain. (Dkt. No. 29 at 8–9.) A party cannot amend a complaint through briefing on a motion to dismiss. Accordingly, these additional allegations are not properly before the court. *See Azimi v. Bunch*, Civil Action No. 3:25-cv-00020, 2025 WL 2988469, at *2 n.3 (W.D. Va. Oct. 23, 2025) (citing *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013)).[3]

## C. Gross Negligence

In Virginia, gross negligence constitutes "that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another." *City of Lynchburg v. Brown*, 613 S.E.2d 407, 410 (Va. 2005). "This requires a degree of negligence that would shock fair-minded persons, although demonstrating less than willful recklessness."

---

[3] The court also notes that Burrell's opposition brief attempts to allege claims against defendants who are not parties to this lawsuit, such as Nurse Rose Marie Tyler and Twin County Regional Hospital. Again, plaintiff cannot amend his complaint via his brief.

*Cowan v. Hospice Support Care*, 603 S.E.2d 916, 918 (Va. 2004). "Because 'the standard for gross negligence [in Virginia] is one of indifference, not inadequacy,' a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Elliot v. Carter*, 791 S.E.2d 730, 732 (Va. 2016) (quoting *Kuykendall v. Young Life*, 261 F. App'x 480, 491 (4th Cir. 2008)).

Burrell correctly states the law that "a claim for gross negligence under Virginia law requires a lesser showing of recklessness than a claim for deliberate indifference under the Eighth and Fourteenth Amendments." *Hixson v. Hutcheson*, Civil Action No. 5:17-cv-00032, 2018 WL 814059, at *6 (W.D. Va. Feb. 9, 2018). (Dkt. No. 29 at 12.) Even so, plaintiff's claims do not plausibly allege a claim for gross negligence because his allegations illustrate that the defendants afforded him some degree of care. Also, the complaint does not allege any misconduct by Warden Hamilton.

## D. Doe Defendants

The court ordered plaintiff to provide sufficient additional information to identify named defendants Jane Doe and John Doe Corporation. (Dkt. No. 14.) Burrell was warned that failure to provide a sufficient response would result in the claims against these defendants being dismissed without prejudice. (*Id.*)

Burrell filed a response (Dkt. No. 16), but the response was not sufficient to identify these parties. The court noted that to the extent Burrell was still intending to sue John Doe Corporation, the Office of the Attorney General (OAG) should provide "any additional information it may have with respect to the 'medical care corporation' that plaintiff may be referencing within 14 days of this order." (Dkt. No. 17.) The OAG had no additional information to provide. Based upon the original order warning that Burrell must provide

8

sufficient information to identify this defendant, the court will dismiss the claims against John

Doe Corporation.

The court's order also provided an additional thirty days for Burrell to file "additional

information sufficient to identify the Jane Doe defendant by providing her first name or initials

or by providing each date, time, and specific location where Jane Doe violated plaintiff's

constitutional rights.  Failure to provide the information in the allotted time shall result in

dismissal of plaintiff's claims against Jane Doe without prejudice."  (Dkt. No. 17.)  Burrell did

not respond to this order.  Accordingly, the claims against this defendant will also be dismissed

without prejudice.

**E.  Motion to Transfer**

Burrell recently filed a motion requesting a transfer to a facility outside of Virginia.

"Also due to retaliation for these civil suits is it possible for the Judges to entertain emergency

transfer to a Department of Corrections outside Virginia."  (Dkt. No. 33.)

Motions for a transfer by a prisoner are considered motions for injunctive relief.  *See,*

*e.g.*, *Campbell v. Smith*, C.A. No. 0:08-3668-PMD-PJG, 2009 WL 3111975, at *1 (D.S.C. Sept.

28, 2009) (explaining that a "request for a transfer to a different penal institution" is "essentially"

a request for "preliminary injunctive relief").  A plaintiff seeking a preliminary injunction must

establish all four of the following elements: (1) that he is likely to succeed on the merits; (2) that

he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of

equities tips in his favor; and (4) that an injunction is in the public interest.  *Winter v. Natural*

*Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  In the context of the administration of a state

prison, injunctive relief should be granted only in compelling circumstances.  *Taylor v. Freeman*,

34 F.3d 266, 269 (4th Cir. 1994).  The judiciary grants "wide ranging deference" to prison

administrators on matters within their discretion. *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980).

Plaintiff's motion must be denied because he has not made any showing that he is likely to succeed on the merits of his claims in this action. Moreover, Burrell's claim in his motion that he is being retaliated against for filing this lawsuit is unrelated to the actual claims in this lawsuit. While a "preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," an injunction should not issue when "it deals with a matter lying wholly outside the issues in the suit." *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 220 (1945); *see also Brooks v. Zorn*, No. 2:22-cv-00739-DCN-MHC, 2024 WL 1571688, at *6 (D.S.C. Apr. 11, 2024) (denying motion that "seeks injunctive relief unrelated to his complaint against non-parties to this lawsuit") (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)).

The court will deny Burrell's motion for a transfer.

### III.  CONCLUSION

The court will issue an appropriate order granting defendants' motion to dismiss and denying plaintiff's motion for a transfer.

Entered: March 30, 2026.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge

10